## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

James David McBroom,

        Petitioner,

v.

Minnesota Correctional Facility – Oak Park Heights,

        Respondent.

Case No. 16-cv-740 (PAM/SER)

REPORT AND RECOMMENDATION

STEVEN E. RAU, United States Magistrate Judge

The above-captioned case comes before the undersigned on Petitioner James David McBroom's ("McBroom") Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Federal Habeas Petition") [Doc. No. 1]. This matter has been referred for the resolution of pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(B)–(C) and District of Minnesota Local Rule 72.1. For the reasons stated below, the Court recommends denying the Federal Habeas Petition and dismissing the case with prejudice.

## I.   BACKGROUND

### A.   Background in State Court

"In 2008, McBroom was convicted of third-degree criminal sexual conduct and sentenced to 140 months in prison, with ten years of conditional release." *McBroom v. Minn. Corr. Facility – Oak Park Heights*, No. A15-1544, 2016 WL 102682, at *1 (Minn. Ct. App. Jan. 11, 2016). On January 23, 2015, McBroom filed a petition for a writ of habeas corpus ("State Habeas Petition") in state district court, challenging the Department of Corrections's ("DOC") imposition of "105 days of extended incarceration for four separate violations of prison disciplinary rules involving outgoing mail that he attempted to send to various media organizations." *Id.* In each of these instances, McBroom attempted to mail a poem that DOC officers determined threatened either

the victim of his third-degree criminal sexual conduct conviction or DOC employees. *See id.* at *1–2. In one instance, McBroom wrote on the outgoing envelopes that the "content contains murder and oral sex all fiction of course," and in another instance he wrote on the envelopes: "Disclaimer enclosed so I could [care less] if anyone finds it offensive, [a]busive, obscene, or insulting." *Id.* at *2 (alteration in original) (internal quotation marks omitted). The specific prison disciplinary rules he violated prohibit threatening others and disorderly conduct. *Id.* at *1–2. At the time of violations—which took place on June 13, 2013; March 14, 2014; April 21, 2014; and April 28, 2014—McBroom was incarcerated in Minnesota Correctional Facility – Oak Park Heights ("MCF-OPH").[1] *See id.* McBroom alleged that his constitutional rights were violated because the DOC did not follow a federal regulation regarding "special mail."[2] *Id.* at *2. The state district court denied McBroom's State Habeas Petition, and McBroom appealed to the Minnesota Court of Appeals. *See id.* at *1.

On January 11, 2016, the Minnesota Court of Appeals affirmed the state district court, concluding that the federal regulations under which McBroom sought relief "do not apply to [the] DOC and its staff," that "the DOC policies, which allow [the] DOC to randomly inspect outgoing mail addressed to the media" do not violate McBroom's First Amendment rights, and that McBroom was properly disciplined. *Id.* at *2–6.

On February 16, 2016, the Office of the Clerk of Appellate Courts received McBroom's petition for review asking the Minnesota Supreme Court to review the decision of the Minnesota

---

[1] McBroom sought federal habeas relief in August 2014, but his petition was dismissed without prejudice for failure to exhaust his state court remedies. *See* R&R Dated Oct. 22, 2014 at 7, *McBroom v. MCF Oak Park Heights*, No. 14-cv-3124 (PAM/SER) [Doc. No. 14]; Order Dated Nov. 19, 2014, *McBroom v. MCF Oak Park Heights*, No. 14-cv-3124 (PAM/SER) [Doc. No. 17].

[2] The regulation states that "[a]n inmate may write through 'special mail' to representatives of the news media specified by name or title." 28 C.F.R. § 540.20(a).

Court of Appeals, but returned it because it was late. (Letter Dated Feb. 17, 2016, Ex. 5, Attached to Resp't's Answer to Federal Habeas Pet., "Answer") [Doc. No. 13 at 163].[3] The Minnesota Supreme Court denied McBroom's motion to accept his late petition for review. (Order, *McBroom v. Minn. Corr. Facility – Oak Park Heights*, No. A15-1544 (Minn. Mar. 4, 2016), Ex. 6, Attached to Answer) [Doc. 13 at 172]. The Minnesota Supreme Court stated that an extension was "not authorized by the Rules of Civil Appellate Procedure" and McBroom's explanations for his untimely filing did not "meet the limited circumstances" where it allowed late filings in the interests of justice. (*Id.*).

### B. Background in Federal Court

McBroom filed his Federal Habeas Petition on March 23, 2016. He alleges that his First and Fourteenth Amendment rights were violated when he was punished for sending mail to media recipients. (Fed. Habeas Pet. at 5, 7). Respondents filed a response, and McBroom filed a reply. (Answer); (Pet'r's Reply to Answer, "Reply") [Doc. No. 14]. Thus, McBroom's Federal Habeas Petition is briefed and ripe for consideration.

## II. DISCUSSION

The Court begins with examining mootness and procedural default. But because the record lacks clarity with respect to both of these issues, the Court concludes that McBroom's Federal Habeas Petition should be dismissed on its merits.

### A. Mootness

Although not addressed by the parties, this Court first addresses whether McBroom's Federal Habeas Petition is moot. McBroom signed his Federal Habeas Petition on March 19, 2016. (Fed. Habeas Pet. at 15). Thus, McBroom met the "in custody" requirement of the federal

---

[3]   Because the Answer and accompanying exhibits were filed on CM/ECF as one document, this Court cites to exhibits by their numbers and pages assigned by CM/ECF.

habeas statute, and this Court has subject-matter jurisdiction. 28 U.S.C. § 2254(a); *Maleng v. Cook*, 490 U.S. 488, 490–91 (1989) (per curiam).

> Article III of the Constitution only allows federal courts to adjudicate actual, ongoing cases or controversies. . . . This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate. When an action no longer satisfies the case or controversy requirement, the action is moot and a federal court must dismiss the action.

*Potter v. Norwest Mortg., Inc.*, 329 F.3d 608, 611 (8th Cir. 2003) (internal quotation marks and citations omitted). If a court cannot provide meaningful relief to the party who initiated the action, the case-or-controversy requirement is not met. *See In re Grand Jury Subpoenas Duces Tecum*, 78 F.3d 1307, 1310 (8th Cir. 1996).

The Court concludes McBroom does not have an ongoing case or controversy, and therefore, his Federal Habeas Petition is moot. DOC records reflect that McBroom was placed on "intensive supervised release" on March 21, 2016—a few days after he signed his Federal Habeas Petition and a few days before this Court received it. Offender Locator, Minn. DOC, https://coms.doc.state.mn.us/publicviewer/OffenderDetails/Index/184975/Search (last visited Feb. 28, 2017). A petitioner's release does not automatically render his habeas petition moot. For example, in *Spencer v. Kemna*, the Supreme Court found that a petitioner who challenges his or her conviction in a habeas petition "always satisfies the case-or-controversy requirement, because the incarceration (or the restriction imposed by the terms of the parole) constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction." 523 U.S. 1, 7 (1998). If the sentence is expired, however, the case-or-controversy requirement is only satisfied if the petitioner has "some concrete and continuing injury," also described as a "collateral consequence." *Id.*

Here, McBroom challenges the 105-day extension of his sentence, which followed disciplinary proceedings. *See generally* (Fed. Habeas Pet.). Under Minnesota law, McBroom must have served the additional time the disciplinary proceedings required before being placed on supervised release. *See* Minn. Stat. § 244.05, subdiv. 1b(b) ("No inmate who violates a disciplinary rule . . . shall be placed on supervised release until the inmate has served the disciplinary confinement period for that disciplinary sanction or until the inmate is discharged or released from punitive segregation confinement, whichever is later."); *see also Sanders v. Fabian*, No. 08-cv-6262 (ADM/FLN), 2009 WL 2143578, at *7 (D. Minn. July 14, 2009) (Noel, Mag. J., as adopted by Montgomery, J.) ("According to this statute, if Petitioner had not completed his . . . disciplinary-confinement sanctions, then he could not have fully served the imprisonment part of his sentence, and he could not now be serving the supervised release part of his sentence."). Thus, the term of his imprisonment that McBroom challenges—the additional 105 days of incarceration for violating prison disciplinary rules—has expired. Because the term of imprisonment expired, this Court cannot provide McBroom with any meaningful relief. In other words, even if this Court granted his Federal Habeas Petition, it would have no effect on McBroom. Therefore, McBroom cannot satisfy the case-or-controversy requirement, and his Federal Habeas Petition is moot and must be dismissed.[4] *See Potter*, 329 F.3d at 611.

---

[4] McBroom filed a civil rights complaint under 42 U.S.C. § 1983 that included claims for constitutional violations resulting in the imposition of the same extended sentence at issue in his Federal Habeas Petition. *See McBroom v. Roy*, No. 15-cv-2791 (PAM/SER), 2016 WL 4708461, at *2 (D. Minn. Sept. 16, 2016) (Magnuson, J.). These claims were dismissed without prejudice under *Heck v. Humphrey*, which held that to recover damages for an unconstitutional conviction or imprisonment, "a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. 477, 486–87 (1994). This Court recognizes that a determination that McBroom's Federal Habeas Petition is moot effectively forecloses him from seeking any remedy for the allegedly unconstitutional imposition of 105 days of extended sentence. Some

That being said, McBroom argues that the 105 days he challenges also extends "his conditional release by 105 days." (Fed. Habeas Pet. at 13); *see also* (Pet'r's Br. & App., "Br.") [Doc. No. 6 at 28]; (Notice of Mot. & Mot. in Regards to Relief Requested in the Fed. Habeas Pet.) [Doc. No. 4 at 1] (requesting a court order requiring the DOC "to recalculate Petitioner's conditional release date with a credit of 105 days off of Petitioner's present sentence of conditional release parole").[5] If true, McBroom's Federal Habeas Petition is not moot because the Court could still award relief that would curtail his conditional release. Therefore, this Court will substantively address McBroom's Federal Habeas Petition.

### B.    Federal Habeas Petition

#### 1.    Exhaustion and Procedural Default

This Court finds McBroom's claims are unexhausted and procedurally defaulted. Whether McBroom has cause to excuse his procedural default, however, is unclear.

First, as Respondent argues, McBroom's claims are unexhausted. (Answer at 4–5). Although McBroom did file a petition for review, the Minnesota Supreme Court rejected his petition because it was late and denied his subsequent motion to accept a late petition. *See* (Exs. 5–6, Attached to Answer). Thus, his claims were not fairly presented to the Minnesota Supreme

---

courts have found *Heck* does not bar a petitioner who does not have an available habeas remedy "through no lack of diligence on his part" from pursuing a § 1983 claim. *See, e.g.*, *Cohen v. Longshore*, 621 F.3d 1311, 1317 (10th Cir. 2010). The Supreme Court has not decided this issue, and there is a split among the circuit courts. *See Muhammad v. Close*, 540 U.S. 749, 752 n.2 (2004) ("Members of the Court have expressed the view that unavailability of habeas for other reasons may also dispense with the *Heck* requirement. This case is no occasion to settle the issue." (citations omitted)); *Cohen*, 621 F.3d at 1315–17 (describing the circuit split and sources thereof). Nonetheless, the Eighth Circuit, which binds this Court, has determined that *Heck* bars a § 1983 claim that would reverse or call into question a plaintiff's conviction or sentence even if a writ of habeas corpus is no longer available. *Entzi v. Redmann*, 485 F.3d 998, 1003 (8th Cir. 2007).

[5]    Consistent with its prior order, this Court considers this motion and its accompanying memorandum part of McBroom's Federal Habeas Petition. *See* (Order Dated May 18, 2016) [Doc. No. 12]; (R&R Dated Apr. 26, 2016) [Doc. No. 11].

Court consistent with its procedural rules and are not exhausted. *Hall v. Delo*, 41 F.3d 1248, 1250 (8th Cir. 1994) (stating that if a state appellate court expressly declines to address a petitioner's claims on the merits because the petitioner violated state procedural rules, a federal claim has not been fairly presented).

Second, McBroom's claims are procedurally defaulted because he cannot return to state court to exhaust his claims. Minnesota state courts prohibit a petitioner from relitigating issues decided against him in a previous habeas corpus proceeding by instituting a subsequent habeas corpus proceeding. *Thompson v. Wood*, 272 N.W.2d 357, 358 (Minn. 1978) (per curiam). Here, McBroom raises in his Federal Habeas Petition the same claims he raised in his state habeas petition. Thus, under *Thompson*, state procedural rules prevent McBroom from filing a subsequent habeas petition on the same grounds. *See id.* This prohibition is a state procedural rule that prohibits a hearing in state court on the merits of McBroom's claims. Therefore, McBroom's claim is procedurally defaulted, and a federal court cannot provide habeas review of his claim. *See McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997).

Procedural default may be excused, however, if McBroom can show that he had either cause for the default and suffered actual prejudice, or by showing that "a miscarriage of justice will occur if [the court does] not review the merits of the petition." *Id.* McBroom argues that the DOC "deliberately and maliciously" attempted to prevent him from seeking review from the Minnesota Supreme Court. (Reply at 2); *see also* (Fed. Habeas Pet. at 2). Specifically, McBroom alleges that he was transferred from MCF-OPH to Minnesota Correctional Facility – Rush City shortly before the Minnesota Court of Appeals issued its decision. (Reply at 2). Because of this transfer, McBroom alleges that MCF-OPH "delayed getting the decision to [him] for close to 3 weeks." (*Id.*). Upon receipt of the decision, McBroom "was forced to wait a week to get into the

law library to type an [a]ppeal." (*Id.*). In other words, McBroom argues that the DOC was the cause of his untimely filing with the Minnesota Supreme Court.

"[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). This may include "some interference by officials." *See id.* Whether the state interfered with McBroom's ability to timely petition the Minnesota Supreme Court for review presents a close call under *Ivy v. Caspari*, 173 F.3d 1136 (8th Cir. 1999). In *Ivy*, the Eighth Circuit found that the petitioner's establishment "that the nondelivery of the . . . petition was not the result of any want of attention on his part to the requirements of the State's filing deadlines" was sufficient to constitute cause. *Id.* at 1141. Under *Ivy*, it is possible that McBroom's inability to timely file his petition for review was caused by the delay in receiving the Minnesota Court of Appeals's decision and his inability to access the law library. Respondent does not address whether there was any cause for McBroom's procedural default. *See* (Answer at 4–5). Thus, this Court decides that the better course of action is to consider the merits of the petition. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

    **2.**    **Merits**

        **a.**    **Legal Standard**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes the standards that govern substantive review of McBroom's habeas claims. Under the relevant portion of AEDPA, a person in state custody may be granted a writ of habeas corpus in two circumstances.

First, a petition must be granted if the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Eighth Circuit has explained:

> A state court decision is "contrary to" clearly established federal law if it either "arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law" or "decides a case differently than th[e] [Supreme] Court has on a set of materially indistinguishable facts." A state court "unreasonably applies" Supreme Court precedent if it "identifies the correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

*Worthington v. Roper*, 631 F.3d 487, 495 (8th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)) (citations omitted).

Second, a petition can also be granted if the state court's resolution of a prisoner's criminal case is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In other words, habeas relief may be available if the conviction at issue is based on findings of fact that could not reasonably be derived from the state court evidentiary record. *See id.*

Nonetheless, a federal district court is not allowed to conduct its own *de novo* review of a prisoner's constitutional claims. *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004) ("We cannot grant relief under AEDPA by conducting our own independent inquiry into whether the state court was correct as a *de novo* matter."). "AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations and quotations omitted). Habeas relief cannot be granted unless the petitioner has identified, and substantiated, a specific error committed by the state courts. *See Harrington v. Richter*, 562 U.S. 86, 100–01 (2011) (explaining the burdens faced by a federal habeas petitioner seeking relief based on an alleged

9

error by the state court). Moreover, the petitioner must show that the error is one that is actionable under § 2254(d). *See id.* The petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

### b. Analysis

In his Federal Habeas Petition, McBroom identifies the First and Fourteenth Amendments as the bases for his petition, but does not argue that the Minnesota Court of Appeals's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law." *See* 28 U.S.C. § 2254(d)(1); (Fed. Habeas Pet. 5, 7). In his Brief, however, McBroom argues that the Minnesota Court of Appeals's decision was "incorrect," that "the same constitutional protections offered to a federal inmate . . . should be offered to a state inmate as well," and that the Minnesota Court of Appeals misunderstood his argument regarding *Elonis v. United States*, 135 S. Ct. 2001 (2015). (Br. at 26). This Court understands McBroom to be challenging the three central holdings of the Minnesota Court of Appeals's decision: (1) "the federal regulations do not apply to [the] DOC and its staff"; (2) the DOC policies regarding mail do not violate McBroom's First Amendment rights; and (3) McBroom was not improperly disciplined because his mailings were labeled as fiction. *See McBroom*, 2016 WL 102682, at *2–6.

### i. Application of Federal Regulations

McBroom does not directly challenge the Minnesota Court of Appeals's finding that although "McBroom's correspondence to media organizations likely would have been classified as special or privileged, and not subject to inspection and seizure" under federal regulations,

10

these regulations do not apply to the DOC.[6] *McBroom*, 2016 WL 102682, at *3; *see* (Br. at 26). Thus, the Court does not separately address this argument and instead proceeds to the First Amendment analysis.

### ii.     First Amendment

The Minnesota Court of Appeals concluded that the DOC's policies, which allow it to "randomly inspect outgoing mail addressed to the media," do not violate McBroom's First Amendment rights. *McBroom*, 2016 WL 102682, at *3–5. The Minnesota Court of Appeals acknowledged a split among federal circuit courts and states "regarding whether prisoners have the right to send letters to the media unopened and unread by prison officials." *Id.* at *3 (citing D. Temko, *Prisoners and the Press: The First Amendment Antidote to Civil Death After PLRA*, 49 Cal. W. L. Rev. 195, 195–96, 213–15 (2013)).

The Minnesota Court of Appeals relied on an Eighth Circuit case, *Smith v. Delo*, 995 F.2d 827 (8th Cir. 1993). *See id.* at *4. In *Smith*, the Eighth Circuit considered whether a Missouri prison regulation—requiring mail to media be unsealed and thus subject to inspection—violated the First Amendment. 995 F.2d at 829. The Eighth Circuit found the regulation was constitutional using the framework announced in *Turner v. Safley*, 482 U.S. 78

---

[6] Arguably, McBroom's argument "that the same constitutional protections offered to a federal inmate . . . should be offered to a state inmate as well" may raise a challenge to the Minnesota Court of Appeals's decision regarding the applicability of federal regulations. This argument, however, essentially argues that the DOC's policy violates his First Amendment rights because it does not conform to the federal regulations. *See* (Br. at 26).

(1987).[7] *Smith*, 995 F.2d. at 831. First, the Eighth Circuit found that the regulation was rationally related to the "legitimate and neutral objective" of "screening mail for escape plans, contraband, threats, or evidence of illegal activity." *Smith*, 995 F.2d at 930. Second, the Eighth Circuit found that because prisoners could communicate through other methods and because the regulation does not bar all communication through the mail, the prisoners have an alternative means to exercise their First Amendment rights. *Id.* at 831. Relatedly, the Eighth Circuit found that prisoners do not have a right to unmonitored communication. *Id.* Third, the Eighth Circuit found striking the regulation would have "a tremendous impact on prison officials" because they "have a strong interest in preventing, deterring, and discovering escape plans" and striking the regulation would "have a strong impact on anyone receiving a threat from an inmate." *Id.* Finally, the Eighth Circuit found that alternatives to the regulation—such as maintaining a list of media outlets to which prisoners could send sealed mail—was not a realistic option. *See id.* at 831–32.

Here, the Minnesota Court of Appeals found the regulation at issue in *Smith* similar to the policy McBroom challenges, and under *Smith*, "the DOC policy that allows prison staff to randomly inspect and review outgoing mail to the media for threats or other criminal activity does not violate the First Amendment." *McBroom*, 2016 WL 102682, at *4. This Court agrees that the regulation in *Smith* is similar to the one McBroom challenges, and finds that the

---

[7] *Turner* held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penologocial interests." *Id.* at 89. The four factors the Supreme Court considered in *Turner* are: (1) whether there is "a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) "the absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Id.* at 89–90.

Minnesota Court of Appeals's analogy to *Smith* is neither contrary to nor an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d)(1).

As he did in state court, McBroom relies on a federal case from the District of Colorado for the proposition that an inmate's outgoing mail to the press or members of Congress is not subject to review. *See, e.g.*, (Br. at 14) (citing *Jordan v. Pugh*, 504 F. Supp. 2d 1109 (D. Colo. 2007)). In *Jordan*, the Colorado federal district court found that the prior version of 28 C.F.R. § 540.20, which stated that an "inmate may not . . . publish under a byline," violated inmates' First Amendment rights. 504 F. Supp. 2d at 1126. The Minnesota Court of Appeals found *Jordan* was inapposite because (1) *Jordan* addressed a federal regulation which does not apply to the DOC; and (2) the policy at issue in *Jordan* was unconstitutional, in part, "because there was no logical connection between the blanket restriction on outgoing news media correspondence and prison security." *McBroom*, 2016 WL 102682, at *5 (citing *Jordan*, 504 F. Supp. 2d at 1125). The Minnesota Court of Appeals found McBroom's situation distinct because the DOC policy does not prohibit all outgoing media correspondence and because McBroom was disciplined for making threats against his victim and DOC staff, not for "trying to have a poem published." *Id.* This Court finds that the Minnesota Court of Appeals's analysis of *Jordan* and its conclusion that it does not apply to McBroom's case is neither contrary to nor an unreasonable application of federal law. *See* 28 U.S.C. § 2254(d)(1).

### iii. "Fiction" Label

In his Federal Habeas Petition, McBroom also argues that the Minnesota Court of Appeals erred in its treatment of *Elonis*, 135 S. Ct. 2001. (Br. at 26–27). In *Elonis*, a jury convicted the defendant of a federal crime that prohibited the transmission in interstate commerce of "'any communication containing any threat . . . to injure the person of another.'"

135 S. Ct. at 2004 (quoting 18 U.S.C. § 875(c)) (omission in original). The jury instructions stated that:

> A statement is a true threat when a defendant intentionally makes a statement in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily injury or take the life of an individual.

*Id.* at 2007 (internal quotation marks omitted). The Supreme Court reversed the defendant's conviction, concluding that the jury must find that the defendant intended to communicate a threat under the statute. *See id.* at 2011–12.

Similar to his argument before the Minnesota Court of Appeals, "McBroom does not explain how *Elonis* supports his arguments in this habeas appeal or how the Supreme Court's analysis of a federal crime applies to [the] DOC's decision to discipline him for threatening others." *McBroom*, 2016 WL 102682, at *6; *see also* (Br. at 26–27) (describing the *Elonis* case). Nonetheless, the Court reviews this portion of the Minnesota Court of Appeals's decision, which was part of its broader analysis of McBroom's argument "that he should not be disciplined because his poems are not threats, but fiction and labeled as such." *See McBroom*, 2016 WL 102682, at *5.

The Minnesota Court of Appeals concluded that "McBroom has not shown that he was improperly disciplined because his poems were fictional; rather he was properly disciplined for attempting to send unallowable mail to media outlets that contained statements threatening others." *Id.* at *5. Further, the Minnesota Court of Appeals concluded that, based on evidence presented to the DOC hearing officers and evidence from McBroom's criminal conviction, "[e]xamination of the poems undeniably establishe[d] that McBroom's 'fiction' label was a ruse, and that his statements and language were thinly-veiled attacks and threats directed at the victim

of his sexual assault and at prison staff once he discovered that his mail was being inspected." *Id.* With respect to the *Elonis* case, the Minnesota Court of Appeals noted, as described above, that McBroom's argument was not supported, but nonetheless, McBroom's poems possessed the element of intent required to be considered threats under *Elonis*. *Id.* at *6.

To the extent McBroom argues the Minnesota Court of Appeals's application of *Elonis* was contrary to or an unreasonable application of federal law, this Court disagrees. *Elonis* addressed the element of intent required for a defendant to be found guilty of violating a federal statute prohibiting the threat of injuring another person. 135 S. Ct. at 2011–12. McBroom was disciplined for violating prison rules, not for violating the federal statute at issue in *Elonis*.

Further, McBroom seems to argue that because he labeled his correspondence as "fiction," that characterization is controlling regardless of his intent.[8] *See* (Br. at 25–26). *Elonis* does not stand for this proposition. *Elonis* stands for the proposition that under the federal statute at issue in that case—which is not relevant to McBroom's case—a jury must find that the defendant intended to make a threat. 135 S. Ct. at 2011–12. McBroom argues that the defendant in *Elonis* identified his writings as fiction, but that fact is not support nor discussed by the Supreme Court's decision. McBroom's label of his correspondence as "fiction" does not compel the conclusion that the Minnesota Court of Appeals erroneously analyzed *Elonis*.

---

[8] As stated above, a writ of habeas corpus may be granted if the state court's resolution of a prisoner's criminal case is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). At first blush, it appears that McBroom's discussion of *Elonis* could be construed as an argument that the state courts "unreasonably determin[ed] the facts" of his case because they found he intended to threaten his prior victims or DOC staff. But because McBroom does not dispute his intentions with respect to his prior victims or DOC staff, the Court declines to read a factual argument into McBroom's briefing.

### iv. Conclusion

The decision of the Minnesota Court of Appeals is not contrary to nor involved an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). McBroom is not entitled to relief on the merits of his Federal Habeas Petition. Therefore, this Court recommends McBroom's Federal Habeas Petition be denied and this case be dismissed with prejudice.

## III. CERTIFICATE OF APPEALABILITY

A § 2254 habeas corpus petitioner cannot appeal a denial of his petition unless he is granted a Certificate of Appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court finds it unlikely that any other court, including the Eighth Circuit Court of Appeals, would decide McBroom's claims any differently than they have been decided here. McBroom has not identified (and the Court cannot independently discern) anything novel, noteworthy, or worrisome about this case that warrants appellate review. Therefore, the Court recommends that McBroom not be granted a COA in this matter.

## IV. RECOMMENDATION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner James David McBroom's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Doc. No. 1] be **DENIED**;

2. This action be **DISMISSED with prejudice**; and

3. If this Report and Recommendation is adopted, a COA should not issue, and judgment should be entered accordingly.

Dated: March 1, 2017

                                               *s/Steven E. Rau*
                                               STEVEN E. RAU
                                               United States Magistrate Judge

**Notice**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under D. Minn. LR 72.2(b)(1) "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after objections are filed; or (2) from the date a timely response is filed.